IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Criminal Action |
| | ) | No. O7-CR-03075-1-CR-S-DW |
| BRETT P. KENT, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. This matter comes before the Court on defendant's Motion to Suppress Search Warrants. The government has responded.

Defendant asserts that all evidence seized and any statements made as a result of the search warrant issued by the Greene County Circuit Court on December 9, 2005, and the four subsequent search warrants, based in whole or in part on the first search warrant, should be suppressed. It is his contention that the supporting affidavit was inadequate to establish probable cause for the issuance of the first search warrant, upon which the subsequent search warrants were wholly or partially based. He asserts that there is no indication that the persons who were referred to in the affidavit were "good citizens" or persons from the "criminal milieu," and that there is no probable cause to establish why such person should be believed. [Motion to Suppress Search Warrants, at 2]. Defendant contends, moreover, that he did not give consent for the search.

The first search warrant was sought to search defendant's business at 1607 W. Republic Road in Springfield. Defendant asserts that the statement from Shawn Whitney, an attorney who

represented the previous owner, Doug Feller, who sold the business to defendant on October 21, 2005, states no probable cause for the issuance of the first search warrant. Additionally, he contends that there is no proof that the employee who contacted the police, Jenny Plake, had ever been in the tanning bed area, or was familiar with the layout; no proof regarding how she had information regarding the tanning bed room involved herein; and no proof that the persons to whom she referred as being listed in other similar files were customers. Defendant also contends that Ms. Plake's statement regarding other persons whose names were recorded and printed are not linked to this case. Regarding the four subsequent search warrants, defendant states that they were essentially based on the initial search warrant. In addition, he contends that, regarding the second search warrant, the affidavit contains the exact same information for a search of defendant's residence, with the exception that the first search warrant had been served at defendant's business by that time, and the additional information from Emily Prestidge and Cindy Silkey all stems from the first search warrant.

The government contends that there was probable cause to support the issuance of the six state search warrants in this case. The complaint for the first search warrant was supported by the affidavit of Springfield Police Department Corporal Stacey Parton. The government asserts that the identities of the witnesses were plainly stated, as well as the basis for their connection with defendant and the business, which adds to their reliability; that they had a substantial basis for knowing the information presented to the police; the information was fresh; the witnesses provided substantial detail regarding their knowledge; and the police corroborated some of the information provided by the witnesses by going to the business, thereby confirming its description and location, and meeting with defendant, which confirmed witness statements that he operated the business.

It is asserted that the second search warrant was for a covert camera system, radio receiver,

computer, and printed business records discovered inside the tanning salon. The affidavit in support of that search warrant was provided by Corporal John Henderson, and the affidavit, which included a summary of information, was very similar to the first affidavit.

The government states that it was actually the third search warrant that was for defendant's residence. This affidavit included new information, provided by Corporal Parton, as well as a summary of the information that had been contained in the previous affidavits. It also included further details about the location of the hidden camera, and information confirming defendant's utility service at his residence. Additionally, Corporal Parton stated that he contacted a witness, Emily Prestidge, on December 12, who was an acquaintance of defendant's, and who provided information about defendant coming to her home and making certain admissions to her. Although the government refers to a sixth search warrant and states that it had not obtained a copy to date, the Court notes that defendant only challenged the first and four subsequent search warrants. Further, there have been no specific allegations regarding the inadequacy of probable cause for that search warrant, other than that it was tainted by the first warrant's alleged lack of probable cause.

The law is clear that a warrant is supported by probable cause if, "given all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that contraband or evidence of a crime will be found in the place to be searched. United States v. Edmiston, 46 F.3d 786, 789 (8th Cir. 1995), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983). Affidavits should be read in a "common-sense and realistic fashion" and judges must make a practical decision based on the totality of the circumstances. United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995) (citation omitted). In determining for suppression purposes the validity of a warrant, the court must determine whether there was a "substantial basis" for the probable cause determination. Gates, 462

U.S. at 238.

Turning to the initial search warrant for defendant's business, the investigating officer, Corporal Stacey Parton, stated in the affidavit that, on December 9, 2005, he had been contacted at the Police Department by persons who "wanted to report that there were nude images of patrons located on a computer." [Affidavit in Support of Search Warrant, at 4]. The caller stated that the computer was located at a tanning salon, formerly Paradise Sun Tanning Salon, which is currently owned and operated by defendant, as 360 Degree Tan L.L.C., at 1607 W. Republic Road in Springfield. Specifically, Jenny Plake, an employee, contacted Corporal Parton. She said that she was working at the tanning salon at 12:30 p.m. on the 9th of December, 2005. Ms. Plake was doing her homework on the business computer. When she lost the homework, she checked the recycle bin folder to try to recover it. She opened the recycle bin folder, and saw the name of a long-term customer, whom she named, listed on a file. Ms. Plake double clicked on the file name, and saw images of this person in various stages of undress, including full nudity. Ms. Plake stated that "the image appeared to have been made from a camera located somewhere near the tanning bed that allowed the viewing of the person disrobing from an image reflected on a mirror in the room and then the fully exposed nude person to include images of the person lying on the tanning bed." [Id.]. She stated that her employer, Brett Kent, had made recent changes in the rooms by moving the beds and mirrors. She confirmed that the image on the computer was of an actual tanning room in the business where she worked, being operated by Brett Kent. Ms. Plake stated that she observed other similar files in the computer, listing additional names. It was also her statement that client names are recorded on the computer and printed or written by hand on documents.

Corporal Parton also indicated in the affidavit that an attorney representing the former business owner, Shawn Whitney, and the former owner, Doug Feller, were present at police

headquarters on the day in question. They provided documents and statements that the business had been sold to defendant on October 21, 2005. The sale was for the entire business, which included equipment and furnishings.

Corporal Parton contacted defendant at approximately 3:10 p.m. on December the 9th, advising him that the business was going to be searched, either with his consent, or with a search warrant. After consulting his attorney, defendant did not give consent to search the business, computer, or any other material. The business was then secured, pending issuance of the search warrant and to prevent destruction of evidence. That same day, the search warrant was executed at the business, where a hidden camera and supporting equipment were located, and evidence was seized.

Subsequently, another search warrant was obtained by Corporal John Henderson, to search and seize records and information from electronic files in a computer seized from defendant's business, as well as printed business records that were discovered inside the tanning salon. The affidavit included the information relied on in the first affidavit, and also included the fact that items seized from that search warrant of defendant's business included a covert camera system, radio AV receiver, computer, and printed business records. The search warrant was obtained on December 12, 2005, at 3:12 P.M.

Regarding the third search warrant, which was for defendant's residence, according to Corporal Parton's affidavit, he contacted Emily Prestidge on December 12. She stated that defendant had come to her residence on the 11th, and that he talked about the invasion of privacy at his business. The witness stated that defendant admitted that he was responsible and that he had ordered the camera equipment, using his home computer, about two to three weeks previously. She stated that defendant admitted that he had recorded persons at the business; that he had edited the

video to highlights of about 20 persons; and that he had removed his home computer on the advice of counsel. The affidavit also indicates that the witness stated that defendant does conduct business from his home. She stated, moreover, that she had her mother on a speaker phone at the time defendant was making these statements. On the 13th, Corporal Parton spoke to the mother, Cindy Silkey, by telephone, and she confirmed that she heard some of the conversation. She stated that she heard the admission statements, the part of the conversation about editing the video, and the fact that there was a camera in one of the beds. Corporal Parton stated that he contacted City Utilities on the 12th and confirmed that defendant had current utility service at 850 S. Cavalier in Springfield. The affidavit also included information from the examination of the business computer, which indicated that there were approximately 20 different files of images of females. Corporal Parton also included information from Springfield Police Department Sergeant Manlove, which he received on December 13. Sergeant Manlove indicated he'd received information from Investigator Kent Shipley. Officer Shipley had met with Mark Lombardo, UPS, who verbally confirmed that a package was delivered to defendant's residence on November 30, 2005, from a company that sells hidden camera equipment, which was similar to that seized from the business. Mr. Lombardo conducted research on the company's website. The package was ordered from Lammensco in Norwalk, Connecticut, which is a company that he confirmed sells hidden camera equipment. Sergeant Manlove viewed an image of a similar camera and equipment that was seized at the business. The search warrant was signed the afternoon of the 13th, and was executed that day.

      Information gleaned from the ongoing investigation was relied upon for the fourth and fifth search warrants for computer equipment. Search warrants were applied for and issued to search the computer hardware and software seized from defendant's business and residence, where more evidence was found.

Having fully reviewed the affidavits in question, and the relevant case law, the Court finds that the affidavits contain sufficient information to support a finding of probable cause to conduct the search at defendant's business and residence, as well as the other searches.

Based on the information set forth in the initial affidavit, it is clear that there was probable cause to support the issuance of the search warrant. The Court believes that the affidavit is sufficiently detailed and contemporaneous to satisfy the probable cause requirement. The named informant, Jenny Plake, promptly brought the matter to the attention of the police after inadvertently discovering nude images of a customer, whom she knew and could identify, on the business computer. Although defendant attempts to question the trustworthiness or source of Ms. Plake's knowledge, it is apparent that she worked at the tanning salon, was familiar with the set up of the rooms, and knew that defendant had moved mirrors and beds around in the room where the images were taken. It is clear that she had detailed, first-hand knowledge about the rooms, the customers, and defendant's actions in having moved mirrors and beds in the particular room where the camera was hidden based on the fact that she worked at the tanning salon. She also knew the method of logging customers' names on the computer and on other documents. There is nothing to suggest that Ms. Plake was anything more or less than a concerned employee who stumbled onto possible criminal activity at her workplace. As a concerned citizen, she promptly brought the matter to the attention of law enforcement. There is no evidence that she made any misstatements or false statements or that this was a "prevaricating tale." [Defendant's Motion, at 2]. The discovery of the nude images, the report to the police, the subsequent affidavit, and the search warrant all occurred on the same day. The police officers corroborated that defendant did, in fact, own and operate the tanning salon through the documents and statements of the previous owner and his attorney. They also informed defendant that his business was going to be searched and gave him an opportunity to

consent to the search before seeking the search warrant. They then secured the business until a search warrant could be obtained. It is clear from a common sense reading of the affidavit that the police acted promptly and efficiently after having received contemporaneous detailed information from a named source with specific, first-hand knowledge of possible criminal activity based on her role as an employee at defendant's business. The totality of the circumstances demonstrate that there were sufficient facts to support an objectively reasonable belief that probable cause existed to search defendant's business. Therefore, the Court finds that there was a substantial basis to support the issuing judge's probable cause determination to issue the search warrant for defendant's tanning salon.

For the same reasons, there was probable cause for the issuance of the subsequent search warrants. In each case, the police had the evidence obtained from the initial, lawful search warrant, as well as additional information. In the case of the third search warrant, they had information from another named individual about defendant personally admitting to her, in her home, to using the video camera to record female customers. He admitted that he had ordered the camera equipment on his home computer approximately two to three weeks earlier, and that he had removed the computer from his home. He admitted editing the video to highlight images of approximately twenty persons. The witness had the speaker phone on, and her mother confirmed to Corporal Parton that she overheard the admissions made by defendant and the conversation about editing the video and that there was a camera in one of the beds. The affidavit also included information about a package being delivered to defendant's residence from a company making similar camera equipment to that found at this business. That information came from Springfield Police Officers, and a named source from UPS, and was corroborated by an internet search of the company from whom defendant had ordered the camera, as well as a visual comparison of the hidden camera seized

from the business.

In the same manner as the first affidavit, it is clear that officer provided firsthand information from an independent third party who personally spoke to defendant on the 11th of December, who was an acquaintance of his, and who also allowed her mother to listen in on the conversation. The named witness, Emily Prestidge, stated to Corporal Parton on December 12 that defendant had verbally confessed to using the video camera to record female customers, admitting to having ordered a camera two or three weeks earlier, and made other admissions. These details were corroborated by Ms. Prestidge's mother, who overheard parts of the conversation on a speaker phone. Ms. Prestidge provided specific, detailed information about business and computer equipment located at defendant's residence, as well as statements he had made to her just the day before. There was also corroboration from law enforcement and a UPS worker regarding a package being mailed to defendant's residence on November 30, which was within the time frame mentioned by defendant to Ms. Prestidge, and the fact that the company sending the package made hidden cameras, like the one seized from defendant's business on the 9th. Coupled with the previous information obtained from the initial and second search warrant, it is clear that there was probable cause to support the issuance of the third search warrant. After that search warrant was lawfully executed, the police found additional information which led to the issuance of the subsequent search warrants.

Under the totality of the circumstances, the Court finds that there was probable cause to support the issuance of all the search warrants. Even assuming, however, that the warrants in this case were not based on probable cause and found to be defective, the Court finds that the good faith exception enunciated in United States v. Leon, 468 U.S. 897, 922-23 (1984), would apply. It is clear that the officers relied in good faith on what they believed to be valid search warrants, which were

reviewed and signed by a neutral magistrate. There is nothing to suggest that the initial or subsequent affidavits were so lacking in indicia of probable cause that the Leon good faith exception should not apply. Based on the evidence before it, the Court finds that it was objectively reasonable for the officers to have believed that probable cause existed in this case.

The Court concludes that no Fourth Amendment right was violated in this case. It will therefore be recommended that the motion to suppress based on an alleged unlawful search be denied.

Because there is no basis for suppression of the evidence on the grounds of invalid search warrants, the fruit of the poisonous tree doctrine is not applicable. Accordingly, defendant's motion to suppress statements must likewise be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Search Warrants should be denied.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 12/27/07